Hall and husband vs. The City of Racine.

HALL and husband, Appellants, vs. THE CITY OF RACINE, Respondent.

*December 16, 1891 — January 12, 1892.*

*Municipal corporations: Street improvements: Requirements on passage of resolution by common council: Approval of mayor: Inconsistent provisions of charter.*

The charter of Racine (ch. 313, Laws of 1876) provides, in tit. IV, sec. 7, that every ordinance, resolution, etc., passed by the common council shall, before it takes effect, be presented to the mayor for his approval. If he does not approve, he shall return it with his objections stated in writing, which objections shall be submitted to the council at their next meeting and entered on the records. If, after reconsideration, two thirds of all the members elected vote to pass the ordinance or resolution, it shall take effect; otherwise, not. The vote, after receiving the objections of the mayor, shall be taken by yeas and nays and entered in the journal. Tit. VI, sec. 6, relating to street improvements, provides that no such work shall be

done, in the absence of a petition therefor by a majority of the resident property owners to be affected, unless the resolution of the council ordering the work shall receive the votes of three fourths of the aldermen elected; that the resolution in such a case shall not be passed at the same meeting at which it is first considered, but shall lie over until a future meeting; and that the vote on its passage shall be taken by yeas and nays and entered in the journal. *Held,* that it is not necessary to present to the mayor for approval a resolution for the grading of a street passed, in accordance with the latter section, in the absence of a petition of the property owners. By enacting in sec. 6 of art. VI the material safeguards against hasty and improper action contained in sec. 7 of tit. IV, and by requiring in sec. 6 a greater number of votes for the adoption of the resolution than would be necessary to pass it over the mayor's objections, the legislature manifested an intention to except such a resolution from the operation of the provisions of said sec. 7.

APPEAL from the Circuit Court for *Racine* County.

The case is stated in the opinion.

For the appellants there was a brief by *Hand & Flett,* attorneys, and *J. E. Dodge,* of counsel, and oral argument by *D. H. Flett* and *J. E. Dodge.* They contended, *inter alia,* that the requirement of sec. 7, tit. IV of the charter, that resolutions, etc., should be presented to the mayor for his approbation, was no formal or immaterial provision. It is of the essence of deliberate and thoughtful legislation, and its purpose is a double one. It not only secures to the mayor a right to insist on a second vote in case he disapproves of a measure, but it secures to him an opportunity *to be heard and to compel the council to listen to his arguments.* Full and complete compliance with this and similar restrictive requirements has uniformly been insisted on by the courts of this and of all other states. *Reilly v. Racine,* 51 Wis. 526–530; *State ex rel. Martin v. Doyle,* 38 id. 92; *Gilman v. Milwaukee,* 61 id. 588; *Pettit v. May,* 34 id. 666; *Hall v. Chippewa Falls,* 47 id. 267; *Massing v. Ames,* 37 id. 645; *People ex rel. Ennis v. Schroeder,* 76 N. Y. 160; *Kepner v. Comm. ex rel. Harrisburg,* 40 Pa. St. 124; *State ex rel.*

*Faber v. Dist. Court,* 41 Minn. 518; *Ladd v. East Portland,* 18 Oregon, 87; *Graham v. Carondelet,* 33 Mo. 262; *Saxton v. Beach,* 50 id. 488; *State v. Newark,* 25 N. J. Law, 399; *Mayor of Breaux's Bridge v. Dupuis,* 30 La. Ann. 1105; *New York & N. E. R. Co. v. Waterbury,* 55 Conn. 19; *Dubuque v. Wooton,* 28 Iowa, 571; *Rich v. Chicago,* 59 Ill. 286; *O'Hara v. Park River,* 1 N. Dak. 279; *Day v. Green,* 4 Cush. 433. The special requirements with reference to grading resolutions are in nowise inconsistent with the submission of such resolutions to the mayor. The true rule of construction, therefore, is that the requirements of sec. 6, tit. VI, are additional to and not in substitution for those of sec. 7, tit. IV. *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513–525; *Att'y Gen. v. Railroad Cos.* 35 id. 425–554; *Curry v. C. & N. W. R. Co.* 43 id. 665–670. When proceedings such as the one in question are authorized, the effect of which is to divest or affect rights of property, the statute is to be strictly construed. " The power conferred must be executed precisely as it is given, and any departure will vitiate the whole proceeding." Sedgwick, Stat. & Const. Law, 339, 351; 2 Dillon, Mun. Corp. sec. 769; Sutherland, Stat. Const. sec. 380; *Myrick v. La Crosse,* 17 Wis. 442; *Kneeland v. Milwaukee,* 18 id. 411; *Hall v. Chippewa Falls,* 47 id. 267.

. *Samuel Ritchie,* for the respondent, to the point that specific provisions relating to a particular subject must govern in respect to that subject as against general provisions in other parts of the law, which might otherwise be broad enough to include it, cited *Felt v. Felt,* 19 Wis. 193–197; *Woodbury v. Shackleford,* id. 55; *Hancock v. Merriman,* 46 id. 160; *State ex rel. Luftring v. Goetze,* 22 id. 363; Dwarris, Stats. 658; *Mead v. Bagnall,* 15 Wis. 156; *Storm v. Adams,* 56 id. 144; *Schieve v. State,* 17 id. 253; *Drummond v. Eau Claire,* 79 id. 97; *Crane v. Reeder,* 22 Mich. 334. Of two repugnant clauses of a statute, that which is last in order

Hall and husband vs. The City of Racine.

of time or in local position will be preferred, and the former deemed abrogated. Subd. 14, 15, sec. 4972, R. S.; *Quick v. Whitewater Tp.* 7 Ind. 570; *Packer v. S. & E. R. Co.* 19 Pa. St. 211; *Korah v. Ottawa*, 32 Ill. 121.

LYON, J. This appeal is from an order sustaining a general demurrer to the complaint. The action is to recover for damages to plaintiff's lot in the city of *Racine*, caused by the alleged unlawful grading of the street abutting such lot. It sufficiently appears from the complaint that the grading was done pursuant to a resolution of the common council of the city directing it, and that it was so ordered without any petition therefor by resident owners of lots fronting upon the proposed improvement. The only defect alleged in the proceedings is that the resolution directing such grading to be done was not presented to the mayor of the city for his approbation, or approved by him. Whether the city charter requires that such resolution should have been presented to the mayor for his approval, is the only question for determination on this appeal.

The charter of the city of *Racine* is ch. 313, Laws of 1876, and the provisions therein necessary to be considered on this appeal are the following:

"TITLE IV. *The common council. Its general powers.* Sec. 7. Every act, ordinance, by-law, regulation, resolution, or appropriation which shall have been duly passed by the common council, before it shall take effect, and within five days after its passage, shall be duly certified by the city clerk, and presented to the mayor for his approbation. If he approve, he shall sign it; if not, he shall return it within five days, with his objections stated in writing, to the city clerk, and the clerk shall submit such objections to the common council at their next regular meeting thereafter, who shall enter said objections on the records of their proceedings, and shall proceed to reconsider the matter; and if,

Hall and husband vs. The City of Racine.

after such reconsideration, two thirds of all the members elected should vote to pass such act, ordinance, by-law, regulation, resolution, or appropriation, it shall take effect and be in force as an act or law of the corporation; otherwise it shall be null and void. All such votes, after receiving the objections of the mayor, shall be taken by yeas and nays, and entered upon the journal of proceedings of the common council. If the mayor shall not return any act, ordinance, by-law, regulation, resolution, or appropriation so presented to him within five days after such presentation thereof, it shall take effect in the same manner as if he had signed it; and in case said ordinance shall not receive the signature of the mayor, the certificate of the city clerk shall be attached thereto, showing the manner in which the ordinance was passed and acquired its validity."

" TITLE VI. *City improvements and special assessments.* Sec. 6. . . . The common council may order such work to be done; *provided,* that no such work . . . shall be ordered, unless a petition therefor shall first be presented to the common council, signed by the residents of the city owning a majority of the feet front of all the lots fronting upon such proposed improvements owned by residents of such city; or unless, in the absence of such petition, the resolution of the common council ordering such work shall receive the votes of three fourths of the aldermen elected, and shall declare why it is necessary for the public interest to proceed without such petition; but no such resolution ordering work without a petition therefor shall be passed at the same meeting at which it is first considered, but the same shall lie over until a future meeting of the common council, and the vote on its passage shall be taken by yeas and nays and duly entered in the journal of proceedings. . . ."

It will be observed that in a case in which it is proposed to order a street to be graded without the preliminary pe-

tition therefor of resident abutting lot-owners (as in the present case) the resolution therefor must be considered at some meeting of the common council, and then must lie over until a future meeting thereof, before it can be lawfully adopted, and the vote on the adoption of the resolution must be taken by yeas and nays and duly entered on the journal of proceedings. The affirmative votes of three fourths of the aldermen elected to the common council are required to pass the resolution. The council consists of twelve aldermen; hence nine affirmative votes are required to pass it. The effect of presenting a resolution to the mayor for his approbation, if he disapprove it, necessarily is to postpone final action thereon until a future meeting of the council; and the vote on a reconsideration of the resolution by the council, after it has been returned without the mayor's approval, must also be taken by yeas and nays and entered upon the journal of the council. On such reconsideration the affirmative votes of two thirds of the aldermen elect — that is, eight affirmative votes — are sufficient to pass the resolution over the mayor's objection.

If the legislature intended that a resolution like the one here under consideration should be submitted to the mayor for his approbation before it can have validity, the questions suggest themselves, Why does sec. 6 of title VI of the city charter provide that the resolution shall lie over to a future meeting of the council, and that the vote upon its passage shall be taken by yeas and nays and entered upon the journal, when such would have been the results had it been submitted to the mayor and by him disapproved? And why does the statute require nine affirmative votes in the first instance to pass the resolution, when only eight are required to pass it over the objections of the mayor? It seems to us that the two charter provisions above quoted are inconsistent with each other, in that more affirmative votes are required to pass the resolution in the first in-

stance than are required to pass it over the mayor's objections. It is difficult to conceive of a veto power, the exercise of which can have no influence whatever upon the passage of a proposed act or resolution. Yet such is the character of the veto power conferred upon the mayor if the charter requires that the resolution in question should have been submitted to him for approval. We should not impute any such inconsequential intention to the legislature unless such intention is clear and indisputable. It is not so in this case. On the contrary, by enacting in sec. 6 of title VI the material safeguards against hasty and improper action contained in sec. 7, title IV, and inserting in the former section a provision inconsistent with a corresponding provision in the latter, the legislature quite plainly manifested an intention to except the resolution under consideration from the operation of the provision contained in sec. 7. It is the duty of the court to effectuate that intention by applying to the case the elementary rule that, where a general intention is expressed, and the act also expresses an intention in a particular case incompatible therewith, such particular intention is to be considered as an exception to the general intention. *State ex rel. Luftring v. Gœtze*, 22 Wis. 363. See, also, other cases cited in the brief of counsel for defendant.

The learned counsel for plaintiffs, in their very able argument, refer to the analogy between the veto power conferred upon the mayor by the city charter, and that conferred upon the governor by the constitution. No doubt such analogy exists. Counsel also refer to the provision in the constitution to the effect that on the passage of appropriation bills and certain others, the yeas and nays shall be called in each house, and that three fifths of all the members elected to each house shall be required to constitute a quorum therein. Art. VIII, sec. 8. They argue that the rule of construction above suggested would render it unnecessary to present

such bills to the governor for his approval. The two cases are not analogous. The constitution only requires the affirmative votes in each house of two thirds of the members present to pass a bill over the executive veto. Const. art. V, sec. 10. This presupposes, however, the presence of a quorum in each house. For the passage of appropriation and other bills enumerated in sec. 8 of art. VIII, sixty members constitute the smallest quorum of the assembly, and twenty of the senate. Hence, when only a bare quorum of each house is present, bills specified in sec. 8, art. VIII, may be passed over the executive veto by an affirmative vote of forty in the assembly and fourteen in the senate. When both houses are full, such bills may be passed over the executive veto by an affirmative vote of sixty-seven in the assembly and twenty-two in the senate.

Now, if the constitution contained a provision that, on the passage of an appropriation bill, the question shall be taken in each house by yeas and nays, which shall be duly entered on the journal, and an affirmative vote of three fourths of the members elected to each house shall be required to pass the bill,— that is to say, seventy-five affirmative votes in the assembly and twenty-five in the senate,— the provision would be analogous to that in the charter of *Racine* under consideration, in that it would be inconsistent with the veto power conferred by sec 10, art. V, of the constitution, and would render the exercise of such power in the case supposed entirely nugatory. We think the approved rules of constitutional and statutory construction would require the courts to hold that the provision above supposed would withhold from the executive the veto power in respect to appropriation bills. However, there is no provision in the constitution which restricts the exercise of that power by the executive in respect to any act of the legislature on any subject, or which is at all analogous in principle to the provisions of the charter of *Racine*, contained in sec. 6, title VI, thereof, here under consideration.

It follows that the demurrer to the complaint was properly sustained, and that the order in that behalf must be affirmed.

