## State ex rel. LUTFRING vs. GŒTZE.

COUNTY JUDGE: *Where his oath must be filed—Effect of filing elsewhere.—* ELECTION, *to fill vacancy, without notice, valid.*

1. A county judge elect must qualify according to sec. 92 (and not sec. 157), chap. 13, R. S.
2. If he files his official oath with the county treasurer (sec. 157), and not with the clerk of the circuit court (sec. 92), the office becomes vacant, under sec. 2, chap. 14, R. S.
3. The act of March, 1866, authorizing defendant to file his oath with the clerk, such filing to have the same effect as if seasonably done, would have been valid if acted upon before any election to fill the vacancy. But a valid election having been held before the oath was filed, at which the relator received a majority of the votes, a subsequent filing was inoperative.
4. An election to fill a vacancy, however created, will not be held invalid merely because the statutory notice was not given.
5. Whether it should not be held invalid in case a want of actual notice to the body of voters were alleged and shown, discussed per PAINE, J., but not decided by the court.

ERROR to the Circuit Court for *Ozaukee* County.

Action to try title to the office of county judge of Ozaukee county. Trial by the court alone. The facts found will clearly appear from the opinion. Judgment for the defendant, *Goetze ;* and *Lutfring* took his writ of error.

*Geo. W. Foster*, for plaintiff in error, to the point that the special provisions of sec. 92, chap. 13, R. S., should prevail over the general provisions of sec. 157, cited Sedgw. Stat. & Con. Law, 237, 423; Smith's Comm., secs. 647–8, -651–4, 659; 9 Cow., 437; 1 Wis., 525; 15 id., 156. To the point that the election of the relator was not void for want of notice, he cited sec. 107, chap. 7, R. S., and *State v. Orvis*, 20 Wis., 235.

*Bentley & Pors*, for defendant in error, argued that there is no substantial conflict between secs. 92 and 157, chap. 13, R. S., except as to the place where the oath of the county judge shall be filed; that if there is a substantial difference as to the form of oath prescribed, sec. 157, must prevail because the oath there prescribed is the one required by the constitution, and no other can be imposed; and that under sec. 12, chap. 191, R. S. ("the provisions of the section which is last in numerical order shall prevail"), sec. 157 must prevail over sec. 92, in respect to the place of filing the oath.

PAINE, J. The court has arrived at a conclusion in this case to which I have assented with much reluctance.

The defendant in error was duly elected county judge of Ozaukee county in April, 1865. On the 2d of January, 1866, he entered upon the duties of his office, having previously complied with the provisions of sec. 157, chap. 13, R. S., for the purpose of qualifying. The oath required by that section was administered by a notary public, and was filed with the county treasurer. At the town elections in

the succeeding April, there was an election to fill the same office, of which, however, no notice was given as required by law; and it does not appear that any notice at all was given, except from the fact that a considerable number of votes was cast, nearly all of which were for the relator. The only ground for holding such an election at that time was, that the defendant in error had neglected to qualify within the time required by law, and that consequently there was a vacancy in the office.

In support of this conclusion it is claimed that the county judge must qualify according to the requirements of sec. 92, chap. 13, instead of sec. 157. That section relates specifically to the office of county judge, while the latter relates to county officers in general.

There is no rule of construction more reasonable, and none better settled, than that special provisions of a statute in regard to a particular subject, will prevail over general provisions in the same or other statutes, so far as there is a conflict. This rule is thus stated in Dwarris on Statutes, p. 658: "Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception. While, if a particular thing is given out or limited in the preceding parts of a statute, this shall not be taken away or altered by any subsequent general words of the same statute." This rule would seem to be directly applicable here, and would require that the provisions of sec. 92 should govern in respect to the mode in which county judges should qualify, so far as there is any conflict between that and the general provisions of sec. 157. So far as relates to the form of the oath, there is perhaps no substantial difference. The latter provides that the officer shall take the oath prescribed by the constitution, which requires him to swear that he will

"faithfully" discharge the duties of his office, etc. Section 92 requires him to swear that he will "faithfully, impartially and honestly" discharge the duties, etc. This is merely a little tautology, using more words to express the same idea, as it is evident that no officer could "faithfully" discharge his duties without at the same time discharging them honestly and impartially. Besides, it is questionable whether it would not be sufficient in any event to take the oath prescribed by the constitution.

So, also, in respect to the officer before whom the oath may be taken, there is no conflict between the two sections. Section 92 provides that it "*may* be taken" before the clerk of the circuit court, or before any justice of the peace. Its language is permissive, and not exclusive. It may well stand with section 157, which enlarged the authority and allowed the oath to be taken before any officer authorized to administer oaths.

But there is an irreconcilable conflict between the two in respect to the place where the oath is to be filed. Section 92 provides that it "shall be filed in the office of the clerk of the circuit court," while the other requires it to be filed with the bond at the office of the county treasurer. It is clear that it was not intended that it should be filed at both places. It could not be, as only one oath is required to be taken. One or the other of these sections must govern; and, in accordance with the rule above stated, we must hold that section 92 governs, and that the oath should have been filed in the office of the clerk of the circuit court. It follows that the defendant in error had not qualified as the law required.

What effect did this failure have upon the office? This question is answered by a positive provision of the statute. Section 2, chap. 14, p⁓ vides that "every office shall become vacant" by the refusal or neglect of the incumbent "to

take his oath of office, or to give or renew his official bond, *or to deposit such oath or bond* within the time prescribed by law." In view of this provision, I see no mode of avoiding the conclusion that the office became vacant by the neglect of the incumbent to file his oath with the clerk. I think the law ought not to be so. There should be some provision to avoid so severe a result in cases where the party has honestly attempted to comply with the law, and has failed merely through misapprehension of its requirements. But there seems to have been no such provision made, and the courts have no power to supply the deficiency.

A vacancy existing, what was the effect of the subsequent proceedings? In the first place, the legislature passed an act in March, 1866, authorizing the incumbent to file his oath with the clerk, and providing that it should have the same effect, when so filed, as though it had been done seasonably. We have no doubt that it was competent for the legislature to pass such a law. It would not be an attempt to legislate a man into office without an election. The incumbent had been elected; and the law in question was a mere authority to supply a defect in his proceedings to qualify. And if the incumbent had acted under its authority before the election of the relator, we think his tenure of office would then have been good. But this act did not attempt to change the existing condition of the office. A vacancy having already occurred before its passage, it continued to exist until the election at which the relator received a majority of votes. And if that election was legal, so that the relator acquired a right to the office by virtue of it, the incumbent could not afterwards defeat his right, by qualifying under the authority of this act. It must be held only as an authority under which he might have qualified provided he did so before the rights of other parties intervened.

It remains, then, only to determine whether the election of the relator was valid.

In the case of *The State v. Orvis*, 20 Wis., 235, this court has already held that the omission to give notice of an election does not vitiate it, and that this rule is applicable as well to elections to fill vacancies as to those for the full term. There are cases supporting such a rule. But if it were a new question here, I should doubt its propriety. I can readily admit its correctness as applicable to the regular elections to fill the full term of office. The electors may well be presumed to know when the regular terms of public officers begin and end. They usually do know it in fact. But in respect to vacancies it is entirely different. It is true they would be very likely to know it, where the vacancy was occasioned by the death of the incumbent, as in *The State v. Orvis*. But where it was occasioned by the refusal or neglect to qualify according to law, as in the present case, it would generally be unknown to most of the people, unless some notice was given. The general presumption that people are supposed to know the law, is not sufficient, for it is not a knowledge of the law merely that is required, but a knowledge also of facts. It may be assumed that the people knew that the law required the oath to be filed in the office of the clerk. But it cannot be assumed that they knew it had not been filed there, but had been filed in the office of the treasurer. It is very obvious, therefore, that any person who had discovered that fact might quietly circulate the information among his friends and get himself elected at the next election, and yet the fact that there was an election for that office remain unknown to the majority of the voters. If such a state of facts were presented, I should not hesitate to hold that the election was invalid for want of actual notice. And I think the case of *The State v. Orvis* does not decide the contrary. That simply decided

that the omission to give the statutory notice does not invalidate the election.   But when a case is presented showing that there was no notice in fact of any kind of an existing vacancy, and of an election to fill it, that will present a different question for consideration.   Several of the cases by which the rule has been established that the omission of the the statutory notice did not vitiate an election, have placed stress upon the fact that, notwithstanding that omission, the people had actual knowledge of the pendency of the election.   *Dishon v. Smith*, 10 Iowa, 218.   And while I have found no case that has held that a few persons who had obtained private information of a fact creating a vacancy, which was generally unknown, could, without any notice hold a valid election to fill it, I have found one well considered case directly to the contrary, and which I think establishes the law that should govern such a question.   It is the case of *Foster v. Scarff*, 15 Ohio St., 532; and it will be observed that in that case the doctrine was applied to a regular election to fill the full term.   The reasons for applying it to a special election to fill a vacancy happening during a term, are much stronger.

The question here indicated, I think, is not presented by this case.   The fact that so few votes were given for the incumbent, who had been elected only a year before, might furnish ground for a suspicion that his friends were not generally aware of the election.   But the case cannot be determined on suspicions.   If such were the fact, it should have been alleged in the answer and been made to appear by the evidence.   On the record as presented, we must assume that the only objection was the want of the statutory notice.   And as that has already been held insufficient, we must, adhering to that decision, hold that the election of the relator was valid.

In what I have said as to the effect of a want of actual

general knowledge of an election, I have given only my own views, the court not having considered that question. But I did not wish to assent to the rule that a want of the statutory notice will not vitiate an election, without stating distinctly the extent to which that assent is given.

The judgment must be reversed, and the cause remanded with directions to enter judgment for the relator on the facts as found.

*By the Court.*—Ordered accordingly.